We'll hear argument first this morning in Case 17-647, Nick v. The Township of Scott, Pennsylvania. Mr. Bremer. Mr. Chief Justice, and may it please the Court, requiring Ms. Nick to prosecute her Federal takings claim in State court conflicts with Section 1983 and is incompatible with the nature of her claim. Her claim is not based on the government's failure to compensate. It's based on the township's failure to recognize that the imposition of an accident's easement is a Fifth Amendment taking that triggers a compensation requirement. Because lack of compensation is not an element of her Federal takings claim, State compensation remedies do not bear on the presentation of the claim in Federal court. How is it not an element of her claim? There's no violation unless she is denied just compensation. Well, Your Honor, in the inverse condemnation context, the problem is not that the government is violating the just compensation clause by failing to pay. The problem is that it's depriving her right to just compensation because it does not recognize that its invasion of her property is a taking that triggers the entitlement to compensation. Well, I thought that was the whole point of an inverse condemnation. They recognize that they owe her money, and the whole point of the process, which can be fairly elaborate, is that they are just trying to figure out how much. If it's not enough, then she can bring a claim. But it seems to me that it's imposing a considerable burden on the State or the local entities to say you've got to pay right away, in other words, go through some sort of process to figure out what you owe before you can even, you know, it's simply a process to figure out how much is due. I don't know why it's such a problem to make her go through that in the initial instance. Well, Your Honor, it helps to remember that condemnation and inverse condemnation takings are quite different. In the condemnation case, which corresponds to what you were just describing, the government condemns the property, and then it's just a process of figuring out where and how she's going to get her money. But when the question is whether there is even a constitutional entitlement  not just a process. And the answer is, is there a taking? So it does reach the constitutional question. Even in a regular condemnation proceeding, they have to decide whether the government has a public interest or not. That's what makes it constitutional. So I don't understand. Can I ask another question, however? Assuming that you were right and that you had a Federal cause of action, and you have one, or should have one under 1983, when this case goes to a Federal court, why would a district court be abuse its discretion for abstaining under any of the three doctrines, Pullman, Louisiana Power and Light, or Colorado River? All of them say that district courts can abstain when a legal issue involves a State law, and that State law could obviate the Federal proceeding. So one of two things can happen in the State court below. They say no taking, and then there's no taking. Or second, there's a taking and the inverse condemnation proceeding will provide the remedy. So in many ways, this obviates the proceeding altogether. Well, if I could, Your Honor, if I could answer the abstention question first. Williamson County is different than any known abstention doctrine. For instance, in Quackenbush, this Court held that a damages claim that the Federal court couldn't abstain from a constitutional claim for damages under Burford. The other abstention doctrines deal when there's an explicit State claim that might resolve the Federal question, but there isn't here. Sotomayor, why isn't that the case here? The whole issue is whether this graveyard law is a – was inherent in the property she took, meaning that's what I understood the legal question was. It's all about the State law rights of landowners vis-à-vis cemeteries. That, Your Honor, is the township's defense. That's a merit's defense. The problem here, the question here, is whether Ms. Nick must go to the State court with her Federal claim. She can't even get in through the courthouse door. That's the fundamental problem. Sotomayor, I guess my bottom line question is, if the abstention doctrines apply, which I think they would, you've given me no reason why they shouldn't, aren't you just inviting now a patchwork of Federal and State involvement in cases? Williamson has at least the advantage of clarifying where people go and how these claims are adjudicated. If we have abstention playing in, you're going to have a patchwork of some State inverse condemnation proceedings, some not, some courts taking cases, others rightfully talking about abstention. I think that's actually the situation you're describing is what is happening under Williamson County. There's no predictable forum for adjudicating a Fifth Amendment claim that there's a taking that creates the entitlement to a compensation remedy. Property owners like Ms. Nick for 30 years have had no reasonable way to litigate that Federal question, is there a taking or not a question or not a taking. Sotomayor, why are you claiming that the State courts in an inverse condemnation proceeding are inadequate? I'm not claiming that at all. State courts can deal with many constitutional questions than they do. The question here, though, is whether Ms. Nick must go to a State court with her Federal takings claim to decide to get the town to recognize that there is a taking within the meaning of the Constitution that creates an entitlement to compensation. Kagan. Kagan. Mr. Beamer, may I get back to the question that you started off with, which is when exactly the violation occurs and why it occurs before the State denies compensation in the inverse condemnation proceeding, which is, I take it, what you're saying. Is that because – are you saying that that's because the right to compensation is immediate? In other words, there's a right to compensation contemporaneous with the taking? Is that what your claim is? Not exactly. There is a right to compensation as soon as there's a determination that there's a taking in the inverse condemnation context. Remember, what we're talking about is an invasion of property. The township, what has the power of eminent domain, doesn't use the power of eminent domain to take that easement. It just uses its regulatory powers. So there's no entitlement to compensation until the property owner, Ms. Nick, goes in and gets a determination that's a taking. After that, compensation is used. Ginsburg. Then what happens? Then suppose you're right, and the preliminary question, is there a taking you can bring in Federal court? Then, and if the answer to that is yes, then the whole inverse condemnation proceeding goes forward in Federal court? I understand your question, Your Honor. Once a taking's determination is made, then a Federal court would hold a damages proceeding just like it does in other Section 1983 contexts, unreasonable seizures, due process deprivations, and it would be easier in the takings context than those other contexts because damages for a taking is simply just compensation. So Federal court can't do that. And that's what inverse condemnation is as well. So how does step two, step one is there a taking, yes, something else happens in Federal court. How does that something else differ from an inverse condemnation proceeding in State court? It does. It's dual, the inverse condemnation rights. The Fifth Amendment under First English incorporates a right of inverse condemnation under the Federal Constitution. The States have also inverse condemnation procedures. But again, the question is when you have a Federal claim, when your claim is that the takings provision in the Fifth Amendment is violated, excuse me, not violated, when it's implicated so that there's a just compensation remedy, do you have to go use a State inverse condemnation instead of the Fifth Amendment's inverse condemnation procedure that's recognized as self-execution? But usually you have to use a State inverse condemnation procedure that's recognized  Sotomayor, I don't understand your claim, because some of the questions and the discussion up to this point is a bit confusing to me. I thought your claim was that there is a violation of the Takings Clause, and you can therefore bring a suit under 1983 when the State does something that constitutes a taking, but at the same time says we're not paying you anything for this. Now, it's not a question of when they would have to pay once they've admitted that there's a taking, but when they do something that constitutes a taking and they say, no, this isn't a taking at all, and therefore you're getting zero, which I understand to be your claim here, then you can go directly to Federal court and bring an action under 1983, and to require you to go to State court before you do that is essentially to require you to exhaust State remedies before you can bring a 1983 claim, which is never required under 1983. I thought that that was your argument. Right. And that is one of our arguments, is that when the government, the township here in this case, invades property without condemning it, it's clear that it's not compensating and their claim occurs at that point. Kagan Well, how is it clear that it's not compensating? In other words, what Justice Alito says clarifies matters considerably, that if the State has already said we're not compensating, then it seems you can claim both that you've had a taking and that the State has refused to compensate. But I thought that the question here arose from the fact that the State has not said yet that it's not compensating, that instead it uses the inverse condemnation proceeding to make that determination. Is that wrong? Yes, in this way. The township is taking her property. The township has imposed an easement on Miss Nick's property that allows the public in every day of the week, every day of the year. It has the power to condemn easements. It did not use it. So we know that the township is not compensating her. It denies that there's even a taking. So it's not a matter of what the State does. It's a matter of what the township, as the defendant that's taking her property and could have used condemnation and declared a taking, gone into State court, kept it there, but instead used its regulatory powers. The township has imposed these restrictions on the property, and it hasn't said that it will pay anything for it. Of course, it hasn't said that if you sue us in State court and you win in an inverse condemnation proceeding, which we will resist, we will refuse to pay the judgment of the State court. It hasn't said that. But it has certainly has not said we admit that this is a taking and we owe you money, and you have to go to State court to determine how much money we owe. Am I right on that? That's right. And the issue is the entitlement. The township denies that there's an entitlement to compensation. But does it? I mean, I'm following Justice Alito's point exactly, except what I'm not understanding is I had thought that in a case like this, there had been no determination by the State that there was liability one way or the other. In other words, the State had not denied liability, nor had the State conceded liability. So this isn't a question where the State has said, look, we deny any liability. It's the State hasn't said one way or the other, and we're going to find out in the inverse condemnation action whether the State is in fact denying all liability or whether the State is going to come in and say, you're right, there is liability here, now let's talk about how much. Well, we could, but again, that liability issue arises under the Fifth Amendment under the takings provision. So a Federal court is capable of deciding that very question, is there liability or not. If there is, there's a compensation remedy ensuring that a de facto taking does not go without compensation, if there is, of course, liability. Kagan, if the State has not denied liability yet, how do you have a Fifth Amendment claim? If the State has denied liability, if it has said, we're refusing to pay, then I take Justice Alito's point exactly. Then you have both your elements of the Fifth Amendment claim. There's been a taking, and the State has refused to pay just compensation, allegedly. But if the State has not yet refused to pay, how do you have a Fifth Amendment claim? Because in the inverse condemnation con – let me back up one minute. I think the appropriate actor is the township, but in the inverse condemnation context, again, the problem is not whether or not the government will pay. It's will it recognize an entitlement because there's been a taking. Until you get that taking's determination made, compensation issues don't play into the equation. And if compensation issues aren't part of the element of the taking's dispute, then State remedies are irrelevant to the presentation of the claim. Roberts, this isn't sort of a black or white thing. I assume what the State – I thought what the State had done and will do in many cases is say, look, we don't think we owe you anything, but we have a process for determining whether we do or not. And if it turns out under the inverse condemnation action we do, well, that's what we'll pay. Is that what is going on here? Well, again, Your Honor, I would say this, that the fact that there are State procedures like inverse condemnation doesn't mean that they must be used for a Federal claim. That's the question here. Must Ms. Nick use the State inverse condemnation remedies rather than the Federal remedy that's under the Fifth Amendment? And Section 1983 would say no. The language and purpose of Section 1983 says no. The history and language and purpose of Section 1331 says no. So what we're asking – Ginsburg's case, I think the first question was should the Court overrule Williamson. Are you asking the Court to do that, or are you distinguishing the claim that you're making from the claim in Williamson? We are asking, Your Honor, for the Court to overrule Williamson County to this extent, the State compensation requirement, because it is inconsistent with Section 1983 and with the nature of a Fifth Amendment inverse condemnation claim. But again, we're not asking the Court to overrule the entirety of Williamson County. The finality, a ripeness prong, which is still a difficult hurdle to get by, would remain intact and would keep many claims – would stop many claims at an early stage. And so we're asking the Court to return to the State compensation requirement. Sotomayor, would that mean that if the State or the locality says, once we have an administrative law, if you disagree with it, you have to go through this administrative process, and if we violated something, we'll pay for it, would that be okay? No, Your Honor. We're not for two reasons, and then I'd like to reserve the rest of my time. That would raise the same race judicata and issue preclusion problems that Williamson County already generates, because administrative procedures in Pennsylvania and many places elsewhere are race judicata and issue preclusion in court. And secondly, as this Court – Sotomayor, but wait a minute. What you're saying is the State passes a law. It says at the bottom of the law, we don't think this is a condemnation but if it is, follow this administrative process. So it's basically saying, we'll pay you if you're right. You're saying they don't have to exhaust that administrative process even. If I understand correctly, you're saying that if a court, like Federal court, found a taking that maybe a property owner should go? No. No. I'm saying they pass an administrative law that puts – that recognizes some sort of easement, whether it's historical or not, I'm not going to get into. There's a dispute as to whether you took title to that property with that easement or not. Do you say that if the State or the City or whatever says you have to follow this administrative process to determine whether this law is right or not, that you don't have to exhaust that administrative process? No, you wouldn't have to, Your Honor, because that would require you to prove it, taking it at an administrative level. And as the Court said in Thunder Basin, administrative agencies are competent. So there's no hopes for States? They're going to be in Federal court all of the time on every administrative law that they pass? May I answer the question? If you answer briefly, you'll be able to reserve some time. These cases, takings cases, will get spread out across State and Federal courts just like other constitutional claims, and the existing ripeness, the traditional ripeness hurdle of finality, will ensure that many of these cases don't make it very far in Federal court. Thank you, counsel. General Francisco. Mr. Chief Justice, and may it please the Court, I'd like to address two basic points that I think are relevant to the discussion that we've been having here. First, Williamson County's premise was correct. The government doesn't violate the takings clause if it provides just compensation after the fact. But it erred in assuming that Section 1983 is only available to address constitutional violations. Instead, it's available to enforce the deprivation of all constitutional rights, and there's no basis for concluding that the right to just compensation is the only right that Section 1983 doesn't cover. But second, I think you can effectively reach the same result under Section 1331, because as this Court held in International College of Surgeons, if a State cause of action asserts a Federal takings claim as such, then that State cause of action arises under the Constitution for purposes of Section 1331, and so the property owner falls within the district court's original jurisdiction, and you don't have to address whether Williamson County was rightly or wrongly decided to fall. Has that ever been considered before? Because it seems a way out of this difficulty. Has anybody ever addressed it? Your Honor, I think the only thing that I can point you to is International College of Surgeons itself. But no, no court has addressed it in the context of Williamson County. Robertson, but you can answer the letters that we're going to get from district court judges around the country who are not going to be very happy learning that they now have to adjudicate State inverse condemnation actions, which can be fairly elaborate. You know, the judge appoints a special master, they go out and evaluate it, you know, it's like arbitration. It's a very intensive procedure that seems more suited for State court than Federal court. Well, Your Honor, I think the Court crossed that bridge in International College of Surgeons when it really, in a factually analogous case, in that case, Illinois' landmarks law applied to buildings owned by the International College of Surgeons, and they asserted in a State cause of action that the application of that law constituted a Federal taking, and this Court held that it was within Federal jurisdiction. I agree that there are going to be eerie issues that courts are going to have to confront, but I don't think they'd be particularly problematic. Take, for example, affirmative condemnation proceedings, State eminent domain proceedings that are brought in Federal court because of diversity jurisdiction. The Federal rules, Federal rule 71.1k, I think it is, already provide for Federal courts to apply the State procedural rules for assessing the amount of compensation in that context. So, yes, they will have to confront those types of State law questions, but I don't think it would be particularly problematic. It's something that courts do in diversity cases all the time and in cases, other cases that raise Federal questions all the time, like mine. Breyer. My question is, I can see his point that you could say a State that says our regulation doesn't take anything, and they dispute it. And you could say a State that acts that way is a State that isn't going to pay you any money. And, therefore, it is complete, the violation. Or you could say we don't know about the second answer yet, so we'll see. Or you could say sometimes the one, sometimes the other. Right. Or we could go on to 1331. But Williamson was decided 32 years ago. This is a very complicated area of law. Why not let sleeping dogs lie? It's called stare decisis. And, Your Honor. There is one harm, the harm of the person who tries to remove and then gets kicked out of court. Right. We could write a sentence saying that's wrong. You've waived it. All right. But I couldn't find in any of these briefs any serious harm that would, in fact, your 1331 point can be tried out by somebody, but any serious point that right now provides a strong reason for overturning a case that's been on the books in a complex area for 32 years. So a couple of responses, Your Honor. I think our 1331 argument doesn't require you to overturn Williamson County. I think it exists very nicely alongside of Williamson County. It wasn't raised below. The 1331 theory was not raised below. No, Your Honor, but we think it is well within the question presented. It wasn't raised by the parties. That's correct, Your Honor, but I think it's well within the question presented because this Court granted certiorari on whether or not to overrule Williamson County. The principal criticism of Williamson County is that it closes the Federal courthouse doors to an entire category of takings litigants. And I think that our alternative argument is directly relevant to whether Williamson County does, in fact, close the Federal courthouse doors to an entire category of takings litigants. I'd also note that Williamson County itself, the parties below, didn't raise the issue that we are here talking about before the Court. So I think that's a pretty good argument. Breyer. There's no reason in history that Federal courts have to be open to every Federal claim. I mean, sometimes they are, sometimes they're not. So therefore, State courts can litigate, too. They're okay. So why do it? My question is why not simply say, law for 32 years, end of this case. Stare decisis, the Solicitor General raises a very interesting point, not litigated here. Right? We'll see what happens. Well, look, I'll put my 1331 argument to the side, because I think, as I've explained, that exists alongside of Williamson County. But let me take on your question directly. Why should the Court consider overturning Williamson County? And we think that the principal reason, if you decide to get there, and we don't think you have to decide to get there, but if you decide to get there, it's because Williamson County's rationale has never actually been explained. And as a result, it has been understood by the lower courts to produce this unintended consequence of essentially closing the courthouse, Federal courthouse doors to a class of takings litigants. Sotomayor, the courthouse doors are closed to people on tax issues, even though there's constitutional claims. So there's a class that we have both for doctrinal reasons and comedy issues and a lot of other reasons, we've closed the courthouse doors. We've closed them to people claiming that they had an unreasonable search and seizure. If they litigated in State court under the Fourth Amendment claim in State court, they can't come to Federal court afterwards. So it's not as if our courthouse doors are open uniformly to everybody any time. There are all sorts of doctrines that preclude people from coming to Federal court once they've been issue-precluded in State court. Right. And that's the key, I think. Once they've been issue-precluded in State court, none of those doctrines, with the exception of the tax doctrine, which I'll address in a moment, actually close the Federal courthouse doors when there's not a pending State court proceeding. Because I think the criminal cases you're talking about are the younger doctrine. When it comes to the tax laws, that's a very tax-specific rule that doesn't just apply to property claims. It applies across the board and bars any constitutional challenge in Federal courts to State or local tax laws. There's no comparable rule that applies across the board to property claims. After all, courts don't need property claims. Sotomayor, which basically says there's no taking, and you don't you're not encouraging us to believe that compensation is due the minute there's a taking, is it? That has to be happened before the taking? We certainly don't think you violate the clause if you provide compensation after the taking. But to go directly to your question, under the First Amendment and the Fourteenth Amendment, courts regularly entertain challenges to State property laws. Think of cases like City of Claiborne or City of Renton against Playtime Theaters. There's no general rule that bars all Federal claims, all claims in Federal court to State and local property laws, other than Williamson County, I agree. And I don't think that there's any basis for treating the takings clause any differently than the other parts of the Constitution. Kagan, I assume we wouldn't have a problem here if we didn't have preclusive effect of the State action. Is that correct in your view?  I think that highlights one of the unintended consequences of Williamson County. But we believe that properly construed, Section 1983 was meant to provide a remedy for the deprivation of all constitutional rights, including the right to just compensation. And that's a right that vests the moment the property is taken. You don't violate it if you pay after the fact. But the right in fact vests the moment the property is taken, which is why you're actually entitled to interest from the moment of the taking until you get paid. So under Section 1983, we think quite literally that a property owner is being deprived of their right to just compensation at the moment the government engages in the lawful act of taking their property without payment. That's why we think that the error in Williamson County was not set. Kagan, you know, I read those pages in your brief a couple of times, and I have to say that it's just going over my head a little bit, how it is that you can say that there's a deprivation of a right when you simultaneously say that there's a deprivation of a right when you say that there's been no violation, even though the government hasn't paid yet. Right. And for most constitutional provisions, there's no difference. So under the First Amendment, you don't deprive somebody of their free speech rights unless you violate their free speech rights. But the Takings Clause is meaningfully different, because the right to just compensation vests only when the government acts lawfully. It's at the moment of the government's lawful action in taking your property that your right to just compensation vests, which is why you get interest. And I'll just finish up. And so we think that quite literally, the property owner is deprived of the right to just compensation from the moment the government acts lawfully to take their property until the property owner is paid. Thank you, Mr. Chief Justice. Roberts. Roberts. Thank you, General. Ms. Sachs. Mr. Chief Justice, and may it please the Court, the reinterpretations proposed here as to both Section 1983 and also what we've heard about a possible interpretation of Section 1331 would create Federal jurisdiction over every local land-use planning decision made in the 39,000-plus jurisdictions across the country. We ask that this Court affirm Williamson County, because it was correct then and it is correct now in this case. What this Court held in Williamson County was that a claimant can't come to Federal court under Section 1983 claiming that their constitutional right to just compensation has been violated when the State provides a reasonable, certain, and adequate means to obtain just compensation. And the Fisherman's County. Roberts. Well, I think it was clear in Williamson County, because they used terms of ripeness and the like, that I don't think the Court contemplated the later decision in San Remo, that by sending it to State court, they were effectively taking the Federal courts out of the whole business of adjudicating these claims because of the preclusive effect of the State remedy. Well, first of all, Your Honor, if I may, the Court did use terms like ripeness, and at that time, ripeness perhaps was not as closely associated with jurisdictional considerations as it is today. It was not a jurisdictional decision, and that the Court could certainly clarify that Williamson County was not jurisdictional. In Williamson County, an element of the Section 1983 cause of action was missing, for the same reason in this case. The only claim raised was Section 1983, that the Petitioner's rights to just compensation had been violated. And yet we know from 130 years of this Court's jurisprudence that there is no violation of the just compensation clause if that reasonable, certain, and adequate provision exists at the time of the taking. But I think what the lawyer says is that there is no violation of the just compensation  taking. Roberts, you agree that the compensation that is due runs from the moment of the taking. In other words, if it takes you 6 months to adjudicate the claim and you say, well, this is how much you owe, you owe interest going all the way back to the point at which the property was taken, correct? Well, yes, this Court has certainly the fact that the interest begins to run is another reason why the time is the time to pursue the inverse condemnation action means that there has not been any deprivation of a constitutional right in the interim. Roberts, it turns out there was a violation of the constitutional right at the moment of the taking, right? That's the whole point of interest. No. If there hasn't been a violation, why do you owe interest from the moment of the taking? Because it's a the post-deprivation process has been determined to be appropriate here as well as in other situations because there is a circumstance, particularly a regulatory circumstance, where it's impossible to determine in advance, given the, as this Court has said, the myriad ways that regulations can affect property and whether or not any of them will ultimately end up being considered to be a taking, it's appropriate. Does the township owe Ms. Nix any money, any compensation? That has yet to be determined, Your Honor. Well, have you made any, you don't know whether you owe her any money? Are you going to go back to your office and think about that and then send her a letter saying whether you owe her any money? If she does absolutely nothing, what will you do? Your Honor, what she is supposed to do in this situation to find out the answer to Your Honor's question is pursue the Pennsylvania procedure that has been in effect for some 300 years. You can't tell me whether you owe her any money? The State has to tell her whether we owe her any money, Your Honor. You are the State. You represent the township. The township is part of the State. So what is before us here is the Commonwealth of Pennsylvania. Does the township owe her any money, yes or no? I don't see how you cannot have an answer to that question. Your Honor, I cannot, I can't have an answer to that question because that is why inverse condemnation exists. That's why the proceeding has to be filed. All right. If she files an inverse condemnation proceeding, are you going to, are you going to confess that you owe her money at the outset? The first step in a Pennsylvania inverse condemnation proceeding would not involve that. The first question is for the court. The court determines in an inverse condemnation proceeding whether there has been a taking. We have the township. Alitono, what will your position be? That's right. What would the position be? Yes, what will the position of the township be? In this particular case, I think the township would say there has been no taking. Therefore, if you have taken her property, you have taken her property, and you have denied her compensation, why is that not a violation of the takings clause? It is a taking without compensation. Because we do not agree that we have taken anything, Your Honor. Well, that's fine. That's a merits issue that can be decided in the 1983 action. But under 1983, there is no violation. Her right to just compensation is what Section 1983 protects.  And if the 14th Amendment prohibits a State from denying that right, we have not denied that right. Counsel, I think this gets back to Justice Breyer's question a little bit, which is you could say that the violation is complete upon the taking of the property with a denial of compensation, as Justice Alito just alluded to, as you've just denied that any compensation is due. Or you could say it should wait until a State litigation process has exhausted itself. And maybe it makes sense to wait when the State has acknowledged a duty to pay, and we can say the State's probably good for it. And that's where those cases originally came from, Cherokee and some of the early ones. But maybe it doesn't make sense when the State has denied any obligation to pay. Maybe it makes – maybe it is different when it's an inverse condemnation, because when we look at other constitutional rights, we don't say that a First Amendment violation isn't complete until someone has litigated that claim in State court under State processes or a Fourth Amendment claim. And when you look at the history of inverse condemnation suits, they originated in common law under trespass. It's a simple claim against the State for trespass. That's what an inverse condemnation suit is, nothing more, nothing less. So why should we single out the – this particular right, the takings clause, for such disfavored treatment to await to exhaust State remedies that wind up in this rightness world to yield a moot Federal claim? A couple of answers to that question, Your Honor. Number one, we are not giving disfavored treatment to property rights. The Constitution does not protect the right to hold onto your property when the government has a just reason to take it. And the – what the Constitution protects is the right to get just compensation for that. And this Court has, since I think 1895, has specifically said inverse condemnation is an appropriate form of providing that reasonable, certain, and adequate compensation. So when – But we could say the exact same thing with a Fourth Amendment claim or a First Amendment claim. There are a lot of great State judges out there. Every bit as good as any Federal judge. And there are a lot of State tort claims that are available, equivalent to the trespass claim of an inverse condemnation suit. Why don't we wait to see how they adjudicate a Fourth Amendment violation by a police officer who's engaged in excessive force? Why don't we wait for when the prosecutor is engaged in malicious prosecution? We don't because 1983 says you don't have to wait. Why not here? Actually, with malicious prosecution, Your Honor, we do. And that's one example of times when we do require litigants to have – have completed their State process. And here, that – we are not suggesting that there isn't a right to seek compensation. The question is, has Congress created a basis in Federal court to seek compensation? The suggestion that this is a Federal takings claim is not where this case started or where Williamson County started. Kagan. Kagan. Ms. Sachs, I think you have a pretty good argument that there's no Fifth Amendment violation until both the taking has been accomplished and there's been a denial of just compensation, and until both of those things happen, there's no claim. But I think the problem is, and the Chief Justice referred to this, the way that that rule combines with the preclusion principles in such a way that it prevents somebody from getting into Federal court at all. In other words, this – and I don't think Williams really understood that this would happen, that saying, well, look, you have to go through the State process for determining just compensation before you can bring a Federal claim, I don't think Williams understood that the result of going through the State process for determining just compensation was that you were never going to be able to bring a Fifth Amendment claim. And that seems to me an issue, and one that I'm trying to find my way around. And I'm wondering whether there is one. Sachs, I think when you go back and look at Williamson County, Williamson County was, again, in terms of a 1983 cause of action and whether there had been a violation. So we're talking about establishing whether there has been a violation. And with respect to the full faith and credit aspect, in Williamson County, the court specifically cites the Migra case, which the Court had decided one year earlier and which specifically turned on exactly that point. Breyer, you don't have to. I mean, you could say what Justice Gorsuch said, couldn't you? The State says, no, we're not going to pay you, ha, because there's no taking, ha. And we could say that's a final decision not to take it. We could. I mean, I don't see any logic. But Williamson didn't. So I thought, well, why let the sleeping dog let it lie? And then, one thing, however, they have a good point. And what do you think of that? Their point is there's surely no reason for the defendant in the State case, or he could do so, remove it to Federal court, and then once he's in Federal court, they won't decide it because it wasn't in State court. You agree that we should, no matter what we do, we should write a sentence which says that's wrong? Yes, Your Honor. And to put that in context, I think of all of the cases that have been raised as supposedly illustrating this dramatic problem created by Williamson County, there were only three situations that we could identify where an actual takings, an actual inverse condemnation claim had been pursued properly in State court and then was dismissed when it was removed. And we agree, no one advocates for not having property owners have their approach in State court. Breyer, how does it work? I should know this, but I don't. A group of people would like to demonstrate in the park next Thursday. To do that in the city, you have to have a permit. They go to the city authorities and they say, we do not want you to demonstrate in park, and we won't give you a permit. Can the person who wants to demonstrate then and there bring a suit in Federal court in saying that violates my First Amendment right? Well, if that is a complete question, I don't know. Your Honor, I would say that that might be an example of one of the many situations where the State doesn't have the right to violate anyone's First Amendment right. The State doesn't have the right to deny anyone of due process. This State does have the right to take property. That is a normal, legitimate, appropriate function of government, and that's why the 14th Amendment and the section 1983 cause of action very appropriately allow violations of the right to get compensation in exchange for the taken to be litigated just like any other violation. You answered a question from Justice Breyer about removal. Is that correct? Removal to Federal court, or did I miss something? About whether a Federal – if a Federal cause of action existed, could there be removal? Yes. So under our cases in Gunn and, I forget whether it's Gamble or Gramble, we said there – that logic suggests there would be a Federal cause of action in this case, right? Any type of condemnation case. We would disagree with that, Your Honor, because Federal question jurisdiction arising under jurisdiction under section 1331 is a very different analysis. Okay. And this Court has pointed out. I'll take your point on that, but then so in what situation would somebody be able to remove an inverse condemnation case to Federal court? If it were coupled with a claim that properly stated a Federal cause of action. If there were a facial challenge to the statute because of the statute. Oh, so it's really not – you're not talking about anything like the case we're talking about today? No. And this case was – Okay. So removal is not a responsive argument to the objections that are being raised. Well, we – this case didn't start off in State court. This plaintiff filed this particular case in Federal court, so there was no removal issue. I'm sorry. But you can remove a State – a State reverse condemnation case if there's diversity. Yes, if there's diversity, yes. And there are other circumstances, too. There could be a legitimate. That's what I was thinking. Right. A legitimate. I was thinking only of their complaint, that there are two or three cases where removal is proper, probably because of diversity, and then the poor plaintiff gets into Federal court and it's dismissed.  But diversity is one of the – But you have no objection to changing that? Correct. The – yes, that would not be what the argument is here. But the distinction is that there has to be a right to be in Federal court in the case should be in Federal court, but Congress has not created a cause of action for general Federal takings. And the City of Chicago case that was mentioned earlier – To have a due process right claim under 1983, you have to have a valid claim that the process that you're being offered by the State is inadequate, unfair, there's a bunch of different words. Yes. So that if compensation is unfair, inadequate, et cetera, you could still have a Federal claim under 1983. Absolutely, Your Honor. And if you have a – if you're claiming that you haven't had a fair process, you can still go – even after you finish the process, you can still go to Federal court and you won't be claim precluded if you prove that the process you received wasn't fair, correct? Correct, absolutely. So it's to say that you have a right to be in Federal court. Justice Ginsburg, when you were in the middle of saying something about City of Chicago, which this solicitor general relies on for the 1331 argument, could you complete your answer to the relevance of City of Chicago? Absolutely, Justice Ginsburg. The reason that we wanted to point out City of Chicago is that City of Chicago is another example, I think, of what Justice Sotomayor was just talking about, a case that belonged in Federal court from the start or could have been filed in Federal court from the start, because when you look at the actual complaint and notice of removal, which we actually got from the Federal court archives for that purpose, they were all Federal facial claims that could have been brought in Federal court in the first place. There was no claim for compensation that was removed. The issue in that case, and the reason the Court referenced, I think, section 1331 jurisdiction was because the Court made a point of saying every issue raised by the plaintiff in that case was a substantial Federal issue. And so that was a case that was properly in Federal court. And those cases are not 100 percent clear. I'm sorry, Your Honor? Ginsburg, because I dissented in City of Chicago. And I remember that, Your Honor, because of the cross, the cross sort of jurisdictional appeal issue, which was really, I think, what was a big issue in that case, not whether there weren't claims that couldn't have been brought in Federal court to start with. And I think that's what it's been cited for here. Roberts, one of the problems with requiring a takings plaintiff to go to State court is that the inverse condemnation procedures can be very elaborate, can be very expensive, requiring the hiring of experts and economic analyses and all that. And somebody with a legitimate takings claim, if forced to go through the State procedures, as a practical matter, may not be able to defend their rights. Well, that is certainly not the case in Pennsylvania, Your Honor, which is what I can speak to. Pennsylvania's process not only is very comprehensive, it provides for expert review, it provides for more relief. Roberts, I assume it's not necessarily the case in every other State. So what would you do in a situation where that's the case, that the procedure is very expensive and requiring someone to go through it will discourage people with legitimate Federal claims from going forward with them? Again, nobody advocates for a position that would not allow owners to go to court. But what Your Honor is positing sounds like it could be a Section 1983 claim because there's been a denial of a means to provide just compensation if the process is so Byzantine or long or complicated that it doesn't represent that reasonable, certain, adequate component that constitutionality demands. Are there any reliance interests at issue here? That's an important consideration under stare decisis. Yes, I think there are, Your Honor. And in what way are States and their subdivisions in a different position today than they were on the eve of the decision in Williamson County? Well, I think the Williamson County, and just if I may put a bit of context to that Williamson County was actually not so much the sea change in this area as Monell, because Monell was where this Court first said you can make a Section 1983 claim against a municipality. That was just 7 years before Williamson County, and the Court said we're not establishing the contours of what liability against municipalities will look like. So the amount of Section 1983 litigation really arose after Monell and came to this Court in Williamson County. But to answer then the question of the difference between then and now, before and after Williamson County, States have used eminent domain and inverse condemnation proceedings to be sure that they're providing the appropriate compensation for any regulatory taking that might be deemed to occur. And, of course, they've continued to do that and to enact statutes and reliance and regulations in reliance on the fact that they've done. Alitoso What have they done in reliance on their understanding that they can't be required to go directly to Federal court in a case like this? Well, I think that they've relied on the existence of their processes as providing the compensation that is required for any taking, so that they don't have to determine that in some fashion. Alitoso So what would they have done differently if that rule had never been adopted? Or if Williamson County had come out differently? Alitoso Yeah. What would they have done differently? What have they done differently as a result of Williamson County that cannot be easily undone? It's well, I think depending upon the basis for undoing Williamson County, if this Court were to say that you have to make payment in advance, I think that would affect counties and municipalities all over the country tremendously, because it would require the rewriting of every eminent domain code out there, and it would require every statute, presumably, or regulation or ordinance to somehow do that. Alitoso But, counsel, that's not quite what's at issue, of course. We're just talking about a remedial regime in either case, a suit in Federal court or a suit in State court. And I would have thought, presumably, the answer would be that the State's conduct would be the same in either circumstance. It would be prepared to pay just compensation for takings, and prepared not to pay just compensation where there is no taking, and it wouldn't matter whether the claim is in Federal court or State court. Isn't that right? Kagan If that's the question, and then I misunderstood Justice Alito's question, and I apologize, but I thought when you were talking about overruling Williamson County, you were thinking of one of the arguments that we've heard here today, which is that perhaps it's always unconstitutional if taking isn't made at the time of interest. Alito No, I'm talking about reliance, usually in a start when stare decisis is at issue, the party invoking stare decisis will say, well, you know, this has been on the books for a long time, and we've done all sorts of things, or the society has done all sorts of things, and it would be a great burden to undo, very upsetting to undo all of that. That's what I was getting at. But you've addressed the reliance part. What other factors under stare decisis weigh strongly in favor of retaining Williamson County in your judgment? Kagan The fact that it was correct from the outset, Your Honor, and the fact that this is an area where one of the factors for stare decisis is whether the Court's recent decisions are consistent or inconsistent with any steps Congress may have taken recently. Now, some of the other factors that are under stare decisis weigh strongly in favor of retaining Williamson County in your judgment. Alito Well, if we overruled it, would that undermine other decisions of ours? Kagan Well, Your Honor, there isn't a whole web of precedents from this Court, both on the full faith and credit issue, but obviously that would be minimized, but things like Del Monte Dunes, where the Court specifically said again, and I think in the 1983 context said there is no, you need that element of denial. Breyer I don't know if you've come across this anywhere. Kagan I'm sorry, Your Honor? Breyer I don't know if you've come across this in stare decisis cases, but I think a factor that moves me, maybe it shouldn't, is it's a technical area of law. Two generations, at least, of lawyers have grown up knowing this is how you proceed, that if you change it, suddenly there will be new lines that have to be drawn, which are the complete refusals, which are the not refusals, but we are at which are the partial refusals, and maybe it will be a boon to law schools that have courses to catch property lawyers up on what's going on. Now, is that sort of thing relevant to stare decisis? Kagan I think that the ability to rely upon existing jurisprudence, to trust the courts, to say that we trust the State courts, to resolve these issues, and to know that especially in property rights cases where stare decisis has particular force, because people do rely upon what they know about property rights, and this Court has called that particular area sort of a super-specialized type of stare decisis that requires a super-specialized justification for overruling it, and that doesn't exist. I'm sorry. Kagan I probably should know the answer to this question, but if Pennsylvania, instead of using an inverse condemnation procedure, used a strictly administrative process, so it didn't go to the courts, it was just some kind of administrative body, would that have the same kind of preclusive effect as a State court judgment does? I think it would not have the same type of preclusive effect in an administrative proceeding. So that's why I'm not sure I have the answer to this question, but I'm not sure I have the answer to that. Ginsburg This is not a 1983 claim because there's an element of such a claim that's missing. What is the element that's missing? Kagan The element that is missing, Justice Ginsburg, is the denial or the deprivation of a constitutional right. There has been no deprivation of a constitutional right, because the right that this Court has said is protected is the right to get just compensation, that that can happen afterwards as long as that reasonable, certain, adequate provision exists. And the Petitioner has not been deprived of that. So to state this as a 1983 cause of action, it misses the fact that it is missing an element. This is a con an inverse condemnation case, which Petitioner could still bring. The statute of limitations has not run out in this case. She has always had the right to file what she should have filed in the first place, which is an inverse condemnation proceeding where, in Pennsylvania, there's all sorts of emphasis on promptness to Your Honor's point about the length of what could happen. That's not the situation in Pennsylvania. There's a tremendous emphasis on how these proceed, and also a tremendous benefit to a takings claimant who is successful, because our inverse condemnation proceeding, if successful, pays and shall pay. This is mandatory. Attorneys' fees, costs, expert fees, appraisal fees, interest, obviously. It is a very beneficial process for property owners. This is not a bad situation for them to be in. They haven't claimed that it is. Roberts. If you do owe Ms. Nick compensation for requiring her to grant access to people to come see the grant, how much do you think that would be worth? Your Honor. Well, I know, but my point is that it's very hard to litigate that question. It's a fairly abstract question. She's entitled to some compensation. It's a taking of an easement. It's going to require extraordinary amounts of valuation procedures. And you say, well, you get attorneys' fees and expert fees, but only if you win at the end. And that's requiring the property owner to undertake a very big gamble to vindicate a right granted under the Constitution. Your Honor, there's nothing to suggest, and Petitioners have not suggested, that the Pennsylvania process is any more long or burdensome or expensive than any litigation process would be. And we submit that actually it's the opposite. Pennsylvania would be a much faster process. Here we are 4 years later, and we're still litigating a preliminary issue. If an inverse condemnation proceeding had been filed, with all of the emphasis on promptness and on the ability to take interlocutory appeals, which is unusual in Pennsylvania, but is provided for this cause of action, this case would have been over long ago. So there's been no suggestion that Pennsylvania's process is burdensome. I can't say there's no process out there, but certainly there's nothing before this Court that would give that as a basis to say that the Pennsylvania process doesn't provide the reasonable, certain, and adequate component. And this Court has said it so many times for 130 years that that is adequate. And that is what we have provided and continue to provide. And, you know, to suggest that every one of these claims would now be appropriately in the Federal forum really deprives the States of the ability to do the right thing, to help shape State property law. Sotomayor, and I know there's some dispute below, but have you taken a look at sovereign immunity? Can States be sued for reverse condemnation in Federal court unless they've agreed to be sued in Federal court? States cannot. The townships are not. The township could, but. The township could, that the immunity was not an issue, Your Honor. So that was not raised. Roberts. Thank you, counsel. Thank you. Mr. Breamer, you have two minutes remaining. Thank you, and may it please the Court. Williamson County is not a sleeping dog. It has run wild through the State and Federal courts for 30 years, swallowing just compensation rights of ordinary people like Ms. Nick. There are so many problems with Ms. – excuse me, with Williamson County, race judicata removal, Rooker-Feldman, its infection of other constitutional claims. There's no way to set things right except overruling that portion of Williamson County and returning. Sotomayor, the only right at issue here that you're claiming is the right to have this adjudicated in Federal court. You haven't suggested that the Pennsylvania inverse condemnation system is unfair, unjust, not reasonable, not fast, not anything else, right? So your only absolute claim is I should have had this done in Federal court, not State court, correct? Your Honor. Because I wanted it in Federal court. The State process is more complicated. Just like the government sometimes wants a constitutional claim in Federal court, sometimes a person like Ms. Nick believes that her Federal rights will be better protected in a Federal forum. Since it's a Federal question whether or not there is a taking, that is appropriate. Sotomayor, which does not guarantee that, unfortunately, because even under the abstention doctrines, the issue of whether or not there was a permanent easement on her property the day she bought it, because this has been historically true for 300 years, I don't know. I don't know how the district court is going to do that without referring to State law. And so that's what she wishes for. Roberts, you may answer briefly. Williamson County is not an abstention doctrine. It's an incorrect doctrine. The violation of a person's right to just compensation occurs at the time of a taking when the government has no intent or means to compensate or denies compensation. And that's what happened here when the township took Ms. Nick's property without condemning it and without any ability or means to compensate. Thank you, Counsel. The case is submitted.